UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOWAN SHAWN MCCLURE,<br><br>Plaintiff,<br><br>v.<br><br>YOUTH AND FAMILY SERVICES OF SOLANO COUNTY, et al.,<br><br>Defendants. | Case No. 14-cv-05629-JCS<br><br>**REPORT AND RECOMMENDATION REGARDING SUFFICIENCY OF COMPLAINT PURSUANT TO 28 U.S.C. § 1915**<br><br>Re: Dkt. No. 1 |

## I. INTRODUCTION

Plaintiff Kowan McClure, Jr. has filed a pro se action involving interference with his familial relationships against the following defendants: (1) Osun Toki Banjoko, an employee of Youth and Family Services, Inc.; (2) Youth and Family Services Inc. of Solano County; (3) Solano County Department of Health and Social Services[1]; (4) Solano County; (5) San Mateo County; (6) Private Defenders Program of San Mateo; and (7) Does 1 through 100. The Court granted Plaintiff's application to proceed in forma pauperis and now reviews the sufficiency of the Complaint under 28 U.S.C. § 1915(e)(2)(B). Since Plaintiff declined magistrate judge jurisdiction, this case will be reassigned to a district court judge. For the reasons stated below, the undersigned recommends that the Complaint be DISMISSED for failure to state a federal claim, with leave to amend.

## II. COMPLAINT

The central grievance in this 19-page Complaint is that Defendant Banjoko, a "therapist" at Youth and Family Services Inc. of Solano County ("YFS"), tried to prevent or delay Plaintiff's

---

[1] The Complaint also refers to a Solano County "Department of Health and Human Services," *see* Compl. at 5 and 10, but the undersigned assumes that Plaintiff meant "Department of Health and Social Services" because there is no Solano County Department of Health and Human Services to the undersigned's knowledge.

grandparents' attempt to adopt him. Plaintiff's alleged injury is that he suffered emotional distress and was denied reunification with his biological mother. Compl. at 9.

### A.   The Adoption

Shortly after Plaintiff McClure's birth, his mother Francina Wesley was arrested for killing McClure's father and subsequently convicted and imprisoned. Compl. at 5. Wesley "gave the infant [Plaintiff] to relatives prior to her arrest." *Id*. In January 1997, when Plaintiff was about seven months old, Plaintiff's paternal grandmother Billie Malveaux obtained guardianship of Plaintiff in the Solano County Superior Court's Probate Division. *Id*. Plaintiff lived with Billie and James Malveaux in San Mateo County. *Id*. Plaintiff alleges that he and Billie Malveaux are both Choctaw and registered with the tribe, as was Plaintiff's deceased father. *Id*. at 6–7.

In August 1999, Plaintiff's mother Wesley was released from prison. Compl. at 5. Plaintiff alleges that she sought services at Youth and Family Services Inc. of Solano County to help her reunite with Plaintiff. *Id*. Wesley enrolled in the YFS's "Strengthening and Nurturing Parenting Program." Defendant Banjoko facilitated the program and conducted a psychological assessment of Wesley. *Id*. Plaintiff did not participate in the program. *Id*.

In October 2000, Wesley petitioned Solano County Superior Court's Probate Division to terminate Malveaux's guardianship of Plaintiff. Compl. at 5. Plaintiff alleges that the case was transferred to San Mateo County "where it languished as Wesley never followed up." *Id*.

In August 2001, Wesley was arrested "for attacking a cab driver with a brick." Compl. at 6. In January 2002, she returned to prison for a three year term. *Id*. Plaintiff alleges that while in prison, Wesley participated in "therapy sessions" with Defendant Banjoko. *Id*.

In September 2002, the Malveauxs allegedly asked Wesley for her consent to adopt Plaintiff "so that he might have stability in his life and possibly begin to have a relationship with Wesley." Compl. at 6. Allegedly "upon defendant Banjoko's advice, Wesley refused and a contested proceeding ensued." *Id.* According to the Complaint, Defendant Banjoko "advised Wesley to ignore the summons and not to seek legal advice in an effort to delay the adoption." *Id*.

In October 2002, the Malveauxs petitioned to adopt Plaintiff. Compl. at 6. Plaintiff alleges that the petition was filed in San Mateo County Superior Court's Juvenile Division as a private

matter under Family Code Section 7800 et. seq. *Id*.

### B.  Defendant Banjoko's Alleged Actions

On February 2, 2003, Defendant Banjoko attended a court proceeding involving Plaintiff's adoption and provided information to the court. Compl. at 7. The Complaint alleges that Banjoko "represented himself as qualified to give expert testimony as to the fitness of Wesley." *Id*. Plaintiff alleges that Banjoko "prepared a letter to the San Mateo County Juvenile Court Judge." *Id*. Plaintiff alleges that Banjoko "requested that the Court continue the matter to allow Wesley time to obtain legal representation based on the information in his psychological assessment and report" and that Banjoko made "disparaging remarks about how James and Billie Malveaux were responsible for Wesley killing Plaintiff McClure's father, by purportedly teaching him to 'be violent and disrespect women', and how James and Billie Malveaux had purportedly 'manipulated the system in their efforts to become the permanent guardians of their grandson.'" *Id*. at 7–8. Plaintiff alleges that the letter used YFS letterhead and that Banjoko represented that he was employed by YFS as an "Adolescent Program Clinical Supervisor" and "Clinical Therapist" and that he wrote the letter on behalf of YFS. *Id*. Plaintiff alleges that the court referred to the February 2, 2003 letter as an "analysis." *Id*. at 8.

Plaintiff alleges that Defendant Banjoko also presented the court with "a treatment plan for Wesley and Plaintiff McClure exclusive of the Malveaux with whom he had spent most of his life." Compl. at 8. Plaintiff alleges that he "had only seen his mother Wesley once during one of her murder trials in 1997 or 1998." *Id*.

In addition, Plaintiff alleges that Defendant Banjoko's written assessment included information regarding "Plaintiff's mental health," which "became a matter of public record" without permission of the guardians, even though Banjoko had not "provided any medical and/or mental health services" to Plaintiff. Compl. at 12.

Plaintiff alleges that Banjoko was not a licensed psychologist and that he was not able to provide psychological assessments without a supervisory psychologist's review. Compl. at 8. Plaintiff alleges that Banjoko lacked the appropriate credentials and license to practice psychotherapy. *Id*. Plaintiff alleges that Banjoko was neither licensed nor registered as an intern at

1  YFS or with any state board. *Id*. Plaintiff also alleges that Banjoko "was an employee of YFS, for
2  more than eight years" and "was under the direct supervision of psychologists which are
3  agents/employees of YFS." *Id*. at 6 and 9.

4        Plaintiff asserts that Defendant Banjoko "intended that the Juvenile Court and the
5  Malveaux rely on his representations" and that Banjoko's "representations were false and that they
6  were made with the intent to defraud and cause emotional pain to Plaintiff McClure, James and
7  Billie Malveaux as well as Wesley." Compl. at 7–8. Plaintiff claims that Banjoko's "testimony and
8  evidence was never fully examined at the various hearings in the Counties of Solano and San
9  Mateo." *Id*. at 11.

10        Plaintiff also alleges that Defendants YFS, Solano County, and San Mateo County
11  supported and ratified Defendant Banjoko's participation in the juvenile court proceedings "in
12  order to prevent the Malveaux from obtaining an adoption of Plaintiff McClure." Compl. at 8–9.

13        On April 2, 2003, Defendant Banjoko again attended "the proceedings to release Plaintiff
14  McClure from the care and control of Wesley" and provided information to the court. Compl. at 8.
15  Plaintiff alleges that neither Wesley nor her attorney was present, and that "instead defendant
16  Banjoko introduced himself to the Court as 'a therapist over at Youth and Family Services in
17  Solano County.'" *Id*. Plaintiff alleges that Banjoko requested a continuance on Wesley's behalf
18  "so that she could be heard as well." *Id*. Plaintiff alleges that Banjoko "additionally provid[ed] a
19  written assessment of plaintiff's mental condition in violation of his rights of medical privacy." *Id*.
20  at 12. Plaintiff alleges that the assessment was purportedly prepared by a "Clinical Therapist" but
21  contained "no endorsement to that effect" and was not signed by any supervisory personnel or
22  licensed health care professional. *Id*.

23        On September 15, 2003, Defendant Banjoko sought an unspecified type of restraining
24  order against the Malveauxs: "Banjoko appeared in Solano Superior Court, with consent,
25  ratification, and approval of YFS, Solano and San Mateo seeking a restraining order from the
26  Court to use its judicial powers to block the Malveauxs' efforts to seek redress for Banjoko's
27  interference with the adoption." Compl. at 9. The Complaint later mentions that Banjoko used "the
28  Restraining Order application to cause the Wright Institute of Berkeley, CA and the West Coast

4

Children's Center to deny releasing information regarding Banjoko's 'professional activities to the Malveauxs to defend against the 'expert witness testimony' that Banjoko offered." Compl. at 18. The Complaint also mentions perhaps in relation to the restraining order that "when the Malveauxs began to inquire about YFS's and Solano's role and authority in the process their efforts were blocked and inhibited by YFS, Solano and DHHS." *Id*. at 10. Furthermore, the Complaint alleges that the Malveauxs "were being denied access to speak with Wesley" and their "request for public information was being denied," where the Malveauxs "wished to communicate with Wesley for the benefit of Plaintiff." *Id*. The Complaint does not explicitly state the outcomes of the restraining order application or the adoption proceeding.

### C.    Plaintiff's Alleged Harm

Plaintiff alleges that "the end result was that Plaintiff was denied reunification with Wesley." Compl. at 9. He claims that "Banjoko sought to deny the Malveauxs' adoption and therefore, Plaintiff's opportunity for a loving and nurturing home. Defendants' actions…interfered with Plaintiff's familial relationships to his detriment. The absence of a relationship with Wesley, his biological mother, has lasted until Plaintiff's reached majority." *Id*. at 10.

### D.    Claims

Plaintiff asserts federal question jurisdiction and brings federal claims under (1) 42 U.S.C. § 1983; (2) the Health Insurance Portable and Accountability Act (HIPAA); (3) Indian Child Welfare Act (ICWA); and (4) Title 45 of the Code of Federal Regulations. In addition, Plaintiff brings the following state claims:  (1) fraud; (2) misrepresentation; (3) tortious interference with parent-child relations; (4) abuse of power; (5) emotional distress; (6) professional negligence; (7) misuse of public funds; (8) conflict of interest/breach of warranty; (9) fabrication of evidence.

### E.    Prayer for Relief

Plaintiff prays for monetary violations for "the violations and harms that he suffered." Compl. at 19.

///

///

### III. LEGAL STANDARD

Where a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and granted leave to proceed in forma pauperis, courts must dismiss any claims which: (1) are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Marks*, 98 F.3d at 495.

A complaint is "frivolous" under § 1915 when the court has no subject matter jurisdiction. *See Pratt v. Sumner*, 807 F.2d 817, 819 (9th Cir. 1987) (a complaint should be dismissed as frivolous under § 1915 where subject matter jurisdiction is lacking). Federal courts have limited jurisdiction and may hear only cases where Congress has granted jurisdiction by statute. Two commonly invoked jurisdictional statutes are 28 U.S.C. § 1332 ("diversity jurisdiction") and 28 U.S.C. § 1331 ("federal question jurisdiction"). Section 1332 grants jurisdiction to hear cases where no plaintiffs are citizens of the same state as any defendants and the amount in controversy is more than $75,000. *See* 28 U.S.C. § 1332. Section 1331 provides jurisdiction to hear cases that "arise under" the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331. A case "arises under" federal law when federal law creates the cause of action or the vindication of a right under state law necessarily turns on some construction of federal law. *See Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088 (9th Cir. 2002). The existence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 (9th Cir. 2002).

A complaint states a claim on which relief may be granted when it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that lacks such a statement must be dismissed. In determining whether a complaint states a claim for relief, the court assumes that all factual allegations in the complaint are true. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). However, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The question is whether the factual allegations, accepted as true, state a claim to relief that is "plausible on its face." *Id.*

When a complaint has been filed by a pro se litigant, which is the case here, courts must "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A district court should not dismiss a pro se complaint without leave to amend unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Further, when a court dismisses the complaint of a pro se litigant with leave to amend, the court must provide the litigant with notice of the deficiencies in the complaint to ensure that the litigant uses the opportunity to amend effectively. *Id.*

## IV. ANALYSIS

### A. Section 1983

Plaintiff McClure accuses Defendants of depriving his right to a familial relationship with his mother and brings this claim under § 1983. Compl. at 11. To state a claim under § 1983, a plaintiff must allege facts that plausibly support: (1) that the action occurred under color of state law and (2) that the action resulted in a deprivation of a constitutional right. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Furthermore, to amount to a substantive due process violation, the harmful action must "shock the conscience." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079-80 (9th Cir. 2011) (police officer's handcuffing of a father in front of his children and telling the children that their father's act of selling tickets was wrong and that he was going to jail for it did not "shock the conscience").

Children have substantive due process rights in their relationships with their parents which may be vindicated through a section 1983 action. *Ovando v. City of Los Angeles*, 92 F. Supp. 2d 1011, 1018 (C.D. Cal. 2000) (police officers' infliction of mental injuries on a child's father may violate the child's substantive due process rights of association with her father, and the child may bring a claim under section 1983); *Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th Cir. 1987) ("We hold that a child's interest in her relationship with a parent is sufficiently weighty by itself to constitute a cognizable liberty interest"), overruled on other grounds by *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999).

Here, Plaintiff has identified a legally cognizable injury in the denial of a familial

relationship with his mother, but he has not alleged facts that plausibly support his claim that Defendants caused a denial of that right. Plaintiff alleges that "YFS, Solano, and DHHS" "blocked and inhibited" the Malveauxs's inquiries about YFS's and Solano's role and authority in the adoption process. Compl. at 10. Plaintiff alleges that the Malveauxs's "access to public information, e.g. the training and supervision of YFS personnel" was denied. *Id*. at 11. Plaintiff also alleges that the Malveauxs "were being denied access to speak with Wesley." *Id*. at 10. Plaintiff provides extensive allegations about how the Defendants interfered with the Malveauxs's adoption proceeding. *Id*. at 7–9. As a result, it is alleged, Plaintiff was deprived of a relationship with his mother – apparently, although this is not entirely clear, because of the failure of the adoption proceeding. *See id*. at 9 ("The end result was that Plaintiff was denied reunification with Wesley, Plaintiff's biological mother"). Plaintiff claims that by denying the Malveauxs's "1st Amendment Rights to Freedom of Speech and access to public information, Plaintiff's rights to Freedom of Speech with his mother were violated" and "Plaintiff was denied a familial relationship." Compl. at 11.

Accepting the factual allegations as true for the purposes of this review, they do not state a plausible claim that Defendants' alleged actions – denying the *Malveauxs* access to speak with Wesley, denying the *Malveauxs* access to public information, or even providing "expert testimony" or "written assessments" at the adoption proceedings – resulted in the deprivation of *Plaintiff's* right to a relationship with his mother. *See Jones*, 297 F.3d at 934 (plaintiff must prove that the action "resulted in" the deprivation of a constitutional right); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985) (causation is a necessary element of any § 1983 claim). Here, there are no facts supporting a plausible link. For instance, accepting that the Malveauxs were trying to facilitate a relationship between Plaintiff and his mother ("the Malveauxs asked Wesley for her consent to adopt Plaintiff so that he might have stability in his life and possibly begin to have a relationship with Wesley"), how did Defendants' interference with the adoption prevent the setting up of a relationship between Plaintiff and his mother? Because there is no plausible link in the current Complaint, the undersigned recommends this claim to be dismissed with leave to amend.

8

**B.     HIPAA**

Plaintiff next brings a claim under the privacy provisions of the federal Health Insurance Portable and Accountability Act (HIPAA).[2] McClure alleges that at the court hearings in February 2003 and on April 2, 2003, Defendant Banjoko provided the court with a written assessment regarding Plaintiff's mental health and condition "without having provided any medical and/or mental health services and without any permission of the guardians, the Malveauxs." Compl. at 12. Plaintiff claims that by providing the written assessment to the court, Plaintiff's alleged mental condition became "a matter of public record" in violation of HIPAA. *Id.*

HIPAA requires health care providers, health plans, and health care clearinghouses to obtain an individual's authorization before disclosing that individual's protected health information, unless an exception applies. *See* 42 U.S.C. § 1320d–1; 45 C.F.R. § 164.508. Protected health information is defined as "individually identifiable health information" and includes psychotherapy notes. § 1320d–2; § 164.508(a)(2). HIPAA allows the disclosure of protected health information without authorization in judicial and administrative proceedings, but it imposes certain requirements on the health care entity providing the information and the party seeking it. § 162.512 (a covered entity may disclose protected health information in the course of any judicial or administrative proceeding in response to an order or a subpoena, discovery request, or other lawful process for which the covered entity receives satisfactory assurances that the party seeking the information has either given notice to the subject of the protected information or reasonably tried to secure a qualified protective order).

However, HIPAA does not provide a private right of action under federal law. *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007); *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010). Although a state law claim may potentially be brought, no such claim has been pleaded. *Id.* Therefore, the undersigned recommends that Plaintiff's HIPAA claim be dismissed without leave to amend to state a federal HIPAA claim but without prejudice to bringing any state law claim based on the same conduct.

---

[2] The Complaint refers to both the Health Insurance Portable and Accountability Act ("HIPAA") (see Compl. at 9) and the Health Information Privacy Protection Act ("HIPPA") (see Compl. at 12). The undersigned assumes that Plaintiff meant to assert a claim under HIPAA.

### C. ICWA

Plaintiff also claims a violation of the Indian Child Welfare Act (ICWA). Compl. at 12. Plaintiff alleges that "throughout the adoptive proceedings in which Banjoko testified as an 'expert witness,' the provisions of ICWA were ignored" and that "YFS failed to contact Plaintiff's tribe as required under ICWA to determine whether the Malveauxs were in fact complying with ICWA." *Id*.

Section 1912 under the ICWA requires that in an involuntary proceeding in State court, "the party seeking the foster care placement of, or termination of parental rights to, an Indian child" to "notify the parent or Indian custodian and the Indian child's tribe." 25 U.S.C. § 1912. Here, the Complaint does not allege that Defendants are seeking foster care placement of or termination of parental rights to Plaintiff, and thus Defendants are not subject to the requirement "to contact Plaintiff's tribe." Compl. at 12. Moreover, the ICWA provides only declaratory relief, and Plaintiff has sought only monetary damages. *Fletcher v. State of Fla*., 858 F. Supp. 169, 173 (M.D. Fla. 1994) ("The ICWA does not provide for a cause of action for money damages. The only relief that can be provided is declaratory relief under the Act"). Finally, Plaintiff's statement that "the provisions of ICWA were ignored" during the adoptive proceedings is merely conclusory and not a factual allegation that is sufficient to state a claim. Thus, the undersigned recommends that this claim be dismissed with leave to amend.

### D. Title 45 of Code of Federal Regulations

Plaintiff asserts a fourth and final federal claim under "Federal Code 45." Compl. at 12. Plaintiff alleges that Defendant Banjoko was using information gathered from his treatment with Wesley for his thesis, which subjects Defendant Banjoko "to the provisions of Federal Rule 45." Compl. at 11. Plaintiff further alleges that Defendant Banjoko gathered information concerning Plaintiff without obtaining the proper legal releases and that in any case the information was fabricated. Compl. at 13.

The undersigned assumes that "Federal Code 45" refers to 45 C.F.R. § 46, which establishes the Department of Health and Human Services' policies for protecting human research subjects. 45 C.F.R. § 46. In particular, 45 C.F.R. § 46 does not give rise to a private right of

action. *Wright v. Fred Hutchinson Cancer Research Ctr.*, 269 F. Supp. 2d 1286, 1289-90 (W.D. Wash. 2002) (regulations establishing protections for human research subjects would not give rise to private right of action because they were not phrased in terms of persons benefitted, they were designed to control aggregate behavior of research facilities, and enforcement sections of the regulations provided for regulatory action). Therefore, the undersigned recommends that this claim be dismissed with prejudice.

### E. State Claims

Absent jurisdiction over any of the federal claims in this Complaint, a federal court does not have jurisdiction over the state claims in this Complaint. *See* 28 U.S.C. § 1331 Therefore, the undersigned recommends that Plaintiff be required to amend his complaint, if possible, to state a federal claim in the first instance. If he cannot, it is recommended that the state claims be DISMISSED.

### V. CONCLUSION

For the above stated reasons, the undersigned recommends the Complaint to be DISMISSED with leave to amend as set forth above.

Any objection to the above recommendations shall be filed no later than fourteen (14) days after being served with a copy of this Report and Recommendation.

Dated: April 3, 2015

_____
JOSEPH C. SPERO
Chief Magistrate Judge